UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

SMUGGLERS NOTCH HOMEOWNERS'      :
ASSOCIATION, INC., GERALD        :
SUNDERLAND, THOMAS GANGI,        :
FLORRIE PAIGE, JOHN MOONEY,      :
LAURENCE GEE, HERBERT LEWIS,     :
ERIC KOTCH, ROBERT OEHRLEIN,     :
STEPHEN HOEY, JONATHAN DONAHUE,  :
CRAIG GREENE, and KEVIN          :
ROHRBACHER,                      :
                                 :  File No. 1:08-CV-186
            Plaintiffs,          :
                                 :
         v.                      :
                                 :
SMUGGLERS' NOTCH MANAGEMENT      :
COMPANY, LTD. and SMUGGLERS'     :
NOTCH WATER COMPANY,             :
                                 :
            Defendants.          :
_____:

RULING ON DEFENDANTS' MOTION TO DISMISS
(Paper 7)

I.   Introduction

      Smugglers' Notch Management Company, Ltd. and Smugglers'

Notch Water Company (collectively, Defendants) move to dismiss

the action filed by Smugglers Notch Homeowners' Association, Inc.

and various individual homeowners (collectively, Plaintiffs)

alleging federal antitrust claims and various state law claims.

      The present procedural status of this matter is murky.

Plaintiffs filed their original complaint on September 12, 2008.

(Paper 1.)  On October 23, 2008, Defendants filed their motion to

dismiss (Paper 7) and memorandum in support (Paper 7-2).

Plaintiffs followed with an Amended Complaint on December 3,

1

2008.  (Paper 10.)  Defendants then filed a second memorandum in
support of their motion to dismiss (Paper 11) on December 22,
2008, the same day Plaintiffs filed an opposition to the motion
to dismiss (Paper 12).  Finally, on January 12, 2009, Defendants
filed a reply brief.  (Paper 13.)

Defendants concede their October 23, 2008 motion to dismiss
is moot (Paper 11 at 4 n.2), and have not filed a second motion
to dismiss.  Plaintiffs concede, however, the complaint addressed
by the October 23 motion to dismiss is the Amended Complaint.  In
their brief opposing the motion, Plaintiffs' assert "[a]ll of
defendants' arguments in its now moot Motion to Dismiss and its
two supporting memoranda are addressed by plaintiffs' Amended
Complaint and this Memorandum."  (Paper 12 at 2.)  The Court will
consider Defendants' motion to dismiss addresses Plaintiffs'
Amended Complaint.

II.  Facts

Defendants own and operate Smugglers' Notch, a four-season
residential and recreational community in Cambridge, Vermont.
Plaintiffs are the homeowners' association, representing itself
and its members -- all of whom own residential units at
Smugglers' Notch -- and a handful of individual property owners.
Defendants provide "community and quasi-municipal services" to
Plaintiffs.  (Paper 10 at 9, ¶ 58.)  The Defendant management
company has historically entered into one of three versions of

individual contracts with homeowners.  Id. at 8, ¶ 56.  These
contracts provide either property management services, property
management services and social and recreational services, or
property management services, social and recreational services,
and rental management.  Id.  The Defendant management company and
the Plaintiff homeowners' association negotiated the terms of
these contracts in 1985.  Id. at 9, ¶ 60.  The parties have been
engaged in contract negotiations since late 2006.  Id. at 10,
¶ 75.  The Defendant management company proposed three contracts
on July 22, 2008 and required homeowners to sign one of the
agreements by September 15, 2008.  Id. at 10-11, ¶ 78-79.
Plaintiffs filed this action on September 12, 2008.

III. Analysis

    A.   Standard of Review

On a motion to dismiss, the Court will accept all well-
pleaded facts as true and consider those facts in the light most
favorable to the plaintiff.  See Patane v. Clark, 508 F.3d 106,
111 (2d Cir. 2007).  Conclusory statements are not sufficient
factual allegations.  E&L Consulting, Ltd. v. Doman Indus. Ltd.,
472 F.3d 23, 28 (2d Cir. 2006) (internal citation omitted).
"To survive dismissal, the plaintiff must provide the grounds
upon which his claim rests through factual allegations sufficient
'to raise a right to relief above the speculative level.'  []
Once a claim has been adequately stated, it may be supported by

showing any set of facts consistent with the allegations in the complaint." ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)).

B. Tying Claims

Plaintiffs assert four antitrust claims, each of which complains of an illegal tying arrangement under section 1 of the Sherman Act.  Section 1, codified at 15 U.S.C. § 1, prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." Id.  A tying arrangement is an agreement to sell a product but only if the buyer also purchases a different -- or tied -- product. E&L Consulting, 472 F.3d at 31.  "'[T]he essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms.'"  Hack v. President & Fellows of Yale College, 237 F.3d 81, 85 (2d Cir. 2000) (quoting Jefferson Parish Hosp. Dist. No. 2 v. Hyde, 466 U.S. 2, 12 (1984)) abrogated on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

A plaintiff alleging an illegal tying arrangement must show: (1) a tying and tied product; (2) evidence of actual coercion by

the seller that forced the buyer to accept the tied product;
(3) sufficient economic power in the tying product market to
coerce the buyer's acceptance of the tied product; (4) anti-
competitive effects in the tied market; and, (5) the involvement
of a "not insubstantial" amount of interstate commerce in the
tied market.  E&L Consulting, 472 F.3d at 31.

Plaintiffs must demonstrate Defendants have appreciable
economic power in the tying market to coerce the buyer's
acceptance of the tied product.  Market power is generally
inferred from a seller's possession of a predominant market
share.  Eastman Kodak Co. v. Image Technical Servs., Inc.,
504 U.S. 451, 464 (1992).  Uniqueness of a product, however, can
provide sufficient market power to compel a purchase a buyer
would not otherwise make in a competitive market.  Hack, 237 F.3d
at 86 (citing Jefferson Parish, 466 U.S. at 16-17).  "Where
uniqueness is alleged, questions of market definition and market
power [] inevitably blend together."  Id.  "'The outer boundaries
of a product market are determined by the reasonable
interchangeability of use or the cross-elasticity of demand
between the product itself and substitutes for it.'"  Id.
(quoting Brown Shoe Co. v. United States, 370 U.S. 294, 325
(1962)).  Because other products may not be adequate substitutes,
those other products are not part of the same market as the
unique product.  Town Sound & Custom Tops, Inc. v. Chrysler

<u>Motors Corp.</u>, 959 F.2d 468, 479 (3d Cir. 1992). A plaintiff must allege a plausible market: One brand is not a plausible market if the brand competes with potential substitutes. <u>See</u> <u>Hack</u>, 237 F.3d at 86.

> To survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes-analysis of the interchangeability of use or the cross-elasticity of demand and it must be plausible. Cases in which dismissal on the pleadings is appropriate frequently involve either (1) failed attempts to limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes or (2) failure even to attempt a plausible explanation as to why a market should be limited in a particular way."

<u>Todd v. Exxon Corp.</u>, 275 F.3d 191, 200 (2d Cir. 2001) (internal quotations and citations omitted).

Plaintiffs proposed geographic market for the tying product vacation properties is "the immediate vicinity of the Village," approximately the Town of Cambridge. (Paper 10 at 12, ¶ 87). Plaintiffs allege the "unique geographic qualities of ski areas tend to give the vacation properties associated with a particular ski area sufficient product differentiation that there is limited substitutability between such properties and properties at other ski or resort areas." <u>Id.</u> ¶ 86. From the allegation itself, it is clear there are possible substitutes for the vacation properties at Smugglers' Notch. Plaintiffs allege "limited substitutability," not "no substitute." <u>See</u> <u>Hack</u>, 237 F.3d at 86 (holding allegation of "no substitute" for a unique Yale

education insufficient to state a claim because many institutions provide "superb educational opportunities."). Vermont boasts many ski areas, most with vacation properties available for rent or sale. Plaintiffs have not demonstrated why the vacation properties and recreation facilities at Smugglers' Notch are different from the myriad other options at ski resorts in Vermont.

Plaintiffs proposed geographic market for access to recreational facilities -- the other alleged tying product -- is seven towns that "offer[] the requisite proximity and access throughout the year." Id. ¶ 94. Plaintiffs allege "similar recreational facilities outside the range of easy, year-round access from Smugglers' Notch Village are poor substitutes for facilities located at the Village." This bare allegation is not sufficient to survive a motion to dismiss. See Chapman v. N.Y. State Div. for Youth, 546 F.3d 230, 237 (2d Cir. 2008) ("Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted." (internal citation omitted)).

Plaintiffs point to Aspen Skiing Co. v. Aspen Highlands Skiing Corp. as support for their narrow geographic markets. In Aspen, a jury found the relevant product market was "[d]ownhill skiing at destination ski resorts" and the "Aspen area" was a relevant geographic submarket. 472 U.S. 585, 596 n.20 (1985). In Aspen, there were four ski areas within the geographic submarket. 472 U.S. at 587-88. Here, Plaintiffs argue for "a geographic market that is as narrow as the resort itself." (Paper 12 at 10.) Without more, Plaintiffs geographic and product markets are insufficient. Plaintiffs proposed markets do not encompass all interchangeable substitute products and are therefore insufficient to state a claim for relief.

In addition to failing to properly define the relevant markets, Plaintiffs' arguments regarding market power miss the mark. Plaintiffs argue the existence of the agreements "is evidence of Management's ability to coerce Homeowners to purchase products they might rather purchase elsewhere or at a different price." (Paper 12 at 9.) First, Plaintiffs allege they negotiated the agreements with Management, id. at 9, ¶ 60, and are currently engaged in contract negotiations, id. at 10, ¶ 75. Second, Plaintiffs are unable to distinguish Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 436 (3d Cir. 1997), a case relied on by Defendants, by failing to explain how they were coerced into buying their properties in the first instance and

entered into the agreements.  See Queen City Pizza, 124 F.3d at 443 ("where the defendant's 'power' to 'force' plaintiffs to purchase the alleged tying product stems not from the market, but from plaintiffs' contractual agreement to purchase the tying product, no claim will lie.")  Plaintiffs could have avoided the effects of which they now complain simply by purchasing a different, or no, vacation property.  Indeed, they are currently renegotiating the contracts and have the option not to sign any further agreements or sell their properties.

        C.    Leave to Replead

        Defendants seek dismissal of Plaintiffs' antitrust claims with prejudice.  They argue Plaintiffs cannot make allegations sufficient to support their tying claims.  (Paper 11 at 15.)  The Second Circuit sanctions dismissals with prejudice when repleading would be futile.  See Chapman, 546 F.3d at 239 n.3.  As the Chapman Court noted, "[g]iven the nature of the [antitrust] claims, repleading would be futile; [plaintiff] offers no plausible argument as to how the failure to plead a relevant market could be rectified through an amended complaint."  Id.

        Plaintiffs amended their complaint once with the benefit of Defendant's first motion to dismiss, and it fails to address the concerns of Queen City and Hack.

D. <u>State Law Claims</u>

Since Plaintiffs' antitrust claims are being dismissed with prejudice, their remaining state claims should also be dismissed. A district court "may decline to exercise supplemental jurisdiction" where it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). This determination is left to the discretion of the trial court. See <u>Kolari v. N.Y. Presbyterian Hosp.</u>, 455 F.3d 118, 122 (2d Cir. 2006) (reversing district court's decision to exercise supplemental jurisdiction after dismissal of all federal claims). The factors of judicial economy, convenience, fairness, and comity, <u>id.</u> at 119, all point to declining to retain jurisdiction over the remaining state-law claims in this case. The parties have not yet engaged in discovery, and Plaintiffs' state claims are more appropriately addressed in state court.

IV. <u>Conclusion</u>

For the reasons stated above, Plaintiffs' antitrust claims, counts 1 through 4 of their Amended Complaint (Paper 10), are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state claims, counts 5 through 18, under 28 U.S.C. § 1367(c)(3), and accordingly, they are dismissed without prejudice.

Defendants' Motion to Dismiss (Paper 7) is GRANTED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of May, 2009.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge