# MANDATE

09-3837-cv
*Smugglers Notch Homeowners' Ass'n, Inc. et al. v. Smugglers' Notch Mgmt. Co., Ltd. et al.*

### UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

### SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

1  At a stated term of the United States Court of Appeals for the Second Circuit, held at the
2  Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York,
3  on the 15th day of March, two thousand eleven.
4
5  PRESENT:
6
7       JOHN M. WALKER, JR.,
8       BARRINGTON D. PARKER,
9       DEBRA ANN LIVINGSTON,
10
11              *Circuit Judges.*
12  _____
13
14  SMUGGLERS NOTCH HOMEOWNERS' ASSOCIATION, INC.,
15  GERALD SUNDERLAND, THOMAS GANGI, FLORRIE PAGE,
16  JOHN MOONEY, LAURENCE GEE, HERBERT LEWIS, ERIC
17  KOTCH, ROBERT OEHRLEIN, STEPHEN HOEY, JONATHAN
18  DONAHUE, CRAIG GREENE, AND KEVIN ROHRBACHER,
19
20              *Plaintiffs-Appellants,*
21
22         v.                                                              No. 09-3837-cv
23
24  SMUGGLERS' NOTCH MANAGEMENT COMPANY, LTD.
25  AND SMUGGLERS' NOTCH WATER COMPANY,
26
27              *Defendants-Appellees.*
28  _____
29
30

[STAMP: UNITED STATES COURT OF APPEALS FILED MAR 15 2011 Catherine O'Hagan Wolfe, Clerk SECOND CIRCUIT]

MANDATE ISSUED ON 04/12/2011

|   |   |
|---|---|
| 1 | RICHARD T. CASSIDY, Hoff Curtis, Burlington, Vermont, |
| 2 | *for Plaintiffs-Appellants.* |
| 3 |   |
| 4 | CARL H. LISMAN, Lisman, Webster and Leckerling, P.C., |
| 5 | Burlington, Vermont, *for Defendants-Appellees.* |
| 6 | Brian K. McCalmon and J. Timothy Hobbs, K&L Gates |
| 7 | LLP, Washington, D.C., *for Defendants-Appellees.* |

8   UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, and DECREED

9   that the judgment of the district court be AFFIRMED.

10   Plaintiffs-Appellants Smugglers Notch Homeowners' Association, Inc. and twelve of its

11   members[1] (collectively "Homeowners") appeal from a judgment of the United States District Court

12   for the District of Vermont (Murtha, *J.*) dismissing their federal claims with prejudice and

13   dismissing their state law claims without prejudice. Homeowners brought this action against

14   Defendants-Appellees Smugglers' Notch Management Company, Ltd. and Smugglers' Notch Water

15   Company (collectively "Smugglers' Notch") for alleged violations of section 1 of the Sherman

16   Antitrust Act, 15 U.S.C. § 1. Appellants also alleged various state law claims. On October 23,

17   2008, Smugglers' Notch moved to dismiss Homeowners' complaint for failure to state a claim

18   pursuant to Fed. R. Civ. P. 12(b)(6). Homeowners filed an amended complaint on December 3,

19   2008. The district court construed Smugglers' Notch's motion as requesting dismissal of the

20   amended complaint, and granted the motion on May 29, 2009.

21   Judgment was entered on June 2, 2009. Homeowners filed a motion for reconsideration on

22   June 12, 2009, requesting that the court reconsider its dismissal of their federal antitrust claims with

---

[1] Gerald Sunderland, Thomas Gangi, Florrie Paige, John Mooney, Laurence Gee, Herbert Lewis, Eric Kotch, Robert Oehrlein, Stephen Hoey, Jonathan Donahue, Craig Greene, and Kevin Rohrbacher.

2

1  prejudice. The district court denied the motion on August 11, 2009. Homeowners timely appealed
2  to this Court on September 10, 2009. We assume the parties' familiarity with the underlying facts
3  and procedural history.

4  On appeal, Homeowners primarily argue that the district court erred in granting Smugglers'
5  Notch's motion to dismiss because Homeowners sufficiently alleged relevant product and
6  geographic markets for their illegal tying claims. Homeowners further submit that they should have
7  been granted leave to amend their complaint a second time.

8  We review a district court's dismissal of a complaint for failure to state a claim pursuant to
9  Fed. R. Civ. P. 12(b)(6) *de novo*. *See Nicholas v. Goord*, 430 F.3d 652, 657 (2d Cir. 2005). In
10 addition, "we review a district court's denial of leave to file an amended complaint for abuse of
11 discretion." *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007). To survive a Rule
12 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to
13 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)
14 (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible only "when
15 the plaintiff pleads factual content that allows the court to draw the reasonable inference that the
16 defendant is liable for the misconduct alleged." *Id.* at 1949-50. We must accept Homeowners'
17 factual allegations as true and draw all reasonable inferences in their favor. *See Iqbal*, 129 S.Ct. at
18 1949.

19 Section 1 of the Sherman Antitrust Act prohibits "[e]very contract, combination in the form
20 of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or
21 with foreign nations." 15 U.S.C. § 1. A tying arrangement is "an agreement by a party to sell one
22 product but only on the condition that the buyer also purchases a different (or tied) product, or at

least agrees that he will not purchase that product from any other supplier." *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 464 (1992) (internal quotation marks omitted). "Such an arrangement violates Section 1 of the Sherman Act if the seller has 'appreciable economic power' in the tying product market and if the arrangement affects a substantial volume of commerce in the tied market." *Id.* (quoting *Fortner Enters., Inc. v. U.S. Steel Corp.*, 394 U.S. 495, 503 (1969) ("*Fortner I*")). "The essential characteristic of an invalid tying arrangement lies in the seller's exploitation of its control over the tying product to force the buyer into the purchase of a tied product that the buyer either did not want at all, or might have preferred to purchase elsewhere on different terms." *Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 85 (2d Cir. 2000).

To state a tying claim, a plaintiff must sufficiently allege: 1) "a tying and a tied product"; 2) "evidence of actual coercion by the seller that forced the buyer to accept the tied product"; 3) "sufficient economic power in the tying product market to coerce purchaser acceptance of the tied product"; 4) "anticompetitive effects in the tied market"; and 5) "the involvement of a not insubstantial amount of interstate commerce in the tied market." *E&L Consulting*, 472 F.3d at 31 (internal quotation marks omitted); *see also Yentsch v. Texaco, Inc.*, 630 F.2d 46, 56-57 (2d Cir. 1980). Homeowners' challenge to the district court's decision primarily rests on the third element.

## A. Homeowners' Proposed Relevant Markets

Homeowners argue that the district court erred in concluding that they did not sufficiently allege relevant markets within which Smugglers' Notch purportedly held economic power. Homeowners contend that they adequately pleaded markets for vacation properties in "the immediate vicinity" of the Village at Smugglers' Notch ("Village") and for recreational facilities located in counties easily accessible from the Village. For the following reasons, we disagree.

1   When evaluating the extent to which a defendant exercises power in the alleged relevant market, that market must be properly defined. *See AD/SAT v. Assoc. Press*, 181 F.3d 216, 226 (2d Cir. 1999); *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 513 (3d Cir. 1998). A relevant market has two components, product and geographic. *See AD/SAT*, 181 F.3d at 226; *Brokerage Concepts*, 140 F.3d 513 (citing *Brown Shoe Co. v. United States*, 370 U.S. 294, 325-28 (1962)). "Because market definition is a deeply fact-intensive inquiry, courts hesitate to grant motions to dismiss for failure to plead a relevant product market." *Todd v. Exxon Corp.*, 275 F.3d 191, 199-200 (2d Cir. 2001). "There is, however, no absolute rule against the dismissal of antitrust claims for failure to allege a relevant product market." *Id.* at 200 (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)).

"For a monopoly claim to survive a Rule 12(b)(6) motion to dismiss, an alleged product market must bear a rational relation to the methodology courts prescribe to define a market for antitrust purposes – analysis of the interchangeability of use or the cross-elasticity of demand, and it must be plausible." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 237 (2d Cir. 2008); *see also Todd*, 275 F.3d at 200. "'Where the plaintiff fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and a motion to dismiss may be granted.'" *Id.* at 238 (quoting *Queen City Pizza*, 124 F.3d at 436) (alteration omitted); *see also Todd*, 275 F.3d at 200.

   1. *Market for "Vacation Properties"*

In their first amended complaint, Homeowners proposed a product market for vacation

1   properties and defined "vacation property" as "residential properties located within or in close
2   proximity to a recreational resort facility." They further confined the geographic scope of this
3   market to "the immediate vicinity of the Village" itself. Homeowners argue on appeal that this
4   proposed market was sufficient to state a tying claim because vacation properties at the Village are
5   unique and not interchangeable with other ski resort vacation property.

6       We are not persuaded that the alleged uniqueness of vacation properties at the Village is
7   sufficient to establish a relevant product market. We have acknowledged that "the uniqueness of
8   a product can trigger a tying arrangement claim." *Hack*, 237 F.3d at 86 (citing *U.S. Steel Corp. v.*
9   *Fortner Enters., Inc.*, 429 U.S. 610, 620-21 (1977) ("*Fortner II*")). Such uniqueness "can provide
10  sufficient market power to compel a buyer to purchase a product he would not purchase in a
11  competitive market." *Id.* (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 16-17
12  (1984), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

13      Not all forms of "uniqueness" sustain a tying claim, however. The relevant inquiry is
14  "'whether the seller has some advantage not shared by his competitors in the market for the tying
15  product.'" *Yentsch*, 630 F.2d at 58 (quoting *Fortner II*, 429 U.S. at 620); *see also Hack*, 237 F.3d
16  at 86-87. Further, the alleged uniqueness must be "plausible." *Hack*, 237 F.3d at 86. In *Hack*, we
17  found that the alleged relevant product market, a Yale education, was implausible. *Id.* Although
18  we agreed that a Yale education was "unique" in a collegiate sense, we emphasized that there were
19  "many institutions of higher learning providing superb educational opportunities," and that such
20  opportunities were not inherently local. *Id.* We further reasoned that if plaintiffs were dissatisfied
21  with Yale's policies, they could matriculate elsewhere, *id.* at 87, and thus declined to recognize the
22  plaintiffs' proposed relevant market. *Id.*

Here, Homeowners limited the relevant product market to "the immediate vicinity of the Village" itself, on the grounds that the "unique geographic qualities of ski areas" tended to give vacation properties at the Village "sufficient *product* differentiation," and therefore "limited substitutability," with properties at other ski or resort areas. Homeowners allege that the *geography* of the market affects the uniqueness of the *product*. *See Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1193-94 (10th Cir. 2009) ("In [such] cases, the two are difficult to disentangle because the product . . . is intimately related to the location. Consumers . . . do not travel to Yale to live in an Eero Saarinen-designed dormitory.") Nevertheless, as the district court noted, there are undoubtedly many other vacation properties located within or in close proximity to ski areas. Moreover, as in *Hack*, nothing suggests that such properties are inherently local to one's permanent residence and must be within the immediate vicinity of the Village. In fact, Homeowners are comprised of residents from outside Vermont, including Massachusetts, New York, New Jersey, Connecticut, and even Florida. If they were dissatisfied with Smugglers' Notch's policies and rules, they could have sought to purchase a residential property located near a different ski area. The district court therefore did not err in concluding that Homeowners failed to state a plausible relevant market for vacation properties.

2. *Market for "Recreational Facilities"*

Homeowners also proposed a market for "recreational facilities," which they defined as "facilities necessary to provide recreational services complementary to a vacation at a ski resort." They limited its geographic scope to several nearby counties that offered "the requisite proximity and access throughout the year," since "facilities outside the range of easy, year-round access from Smugglers' Notch Village are poor substitutes for facilities located at the Village." Homeowners

1    argue on appeal that the market for recreational facilities is in fact an aftermarket created by the
2    purchase of vacation properties at the Village, and thus inherently local.

3    We disagree. We observed in *Hack* that the plaintiff's "focus [was] upon a contractually
4    created class of consumers." 237 F.3d at 85. We then held that "[e]conomic power derived from
5    contractual arrangements affecting a distinct class of consumers" could not serve as a relevant
6    market for antitrust purposes. *Id.* Similarly, in *Queen City Pizza*, on which we relied in *Hack*, *see*
7    237 F.3d at 85, the court held that "where the defendant's 'power' to 'force' plaintiffs to purchase
8    the alleged tying product stems not from the market but from plaintiffs' contractual agreement to
9    purchase the tying product, no claim will lie." *Queen City Pizza*, 124 F.3d at 443. The court
10   reasoned that "a court making a relevant market determination looks not to the contractual restraints
11   assumed by a particular plaintiff when determining whether a product is interchangeable, but to the
12   uses to which the product is put by consumers in general." *Id.* at 438; *see also United States v. E.I.*
13   *du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956). Thus, "the particular contractual restraints
14   assumed by a plaintiff are not sufficient by themselves to render interchangeable commodities non-
15   interchangeable for purposes of relevant market definition." *Queen City Pizza*, 124 F.3d at 443.

16   Homeowners contend that this case is more closely analogous to the Supreme Court's
17   decision in *Eastman Kodak*, 504 U.S. at 482. However, both cases from our Circuit and others have
18   clarified the reach of *Eastman Kodak*. A primary distinction has been whether the restraints in the
19   alleged relevant aftermarket were foreseeable. In *Hack*, we recognized that concerns under *Eastman*
20   *Kodak* could arise where a plaintiff was "locked in" by his investment in housing which he could
21   no longer use "because of an *abrupt* change in policy." *Hack*, 237 F.3d at 87 (emphasis added). By
22   contrast, where policies were "fully disclosed long before" entering into an agreement, a plaintiff

1  has no "lock-in" costs, and *Eastman Kodak* does not apply. *Hack*, 237 F.3d at 87; *see also Queen City Pizza*, 124 F.3d at 440.

Here, Homeowners were fully aware of Smugglers' Notch's policies and voluntarily signed purchase and sale agreements that expressly required purchasers to enter into one of three service contracts with Smugglers' Notch. Homeowners entered into these contracts, which expressly provided that they could be terminated with notice by any party, and that Homeowners would not be entitled to use facilities or services at the Village without another services contract in place. As a result, Homeowners knew that Smugglers' Notch retained significant power over their access to recreational facilities, both through the duration and upon termination of the service contracts. Homeowners' argument is therefore without merit.

**B. Leave to Replead**

Homeowners also argue that they should have been granted leave to amend their complaint for a second time. "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Bellikoff*, 481 F.3d at 118 (quoting *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 15(a) ("[L]eave to amend shall be freely given when justice so requires."). However, where the plaintiff "offers no plausible argument as to how the failure to plead a relevant market could be rectified through an amended complaint," denial of leave to amend and dismissal of the antitrust claims with prejudice is appropriate. *Chapman*, 546 F.3d at 239 & n.3; *see also Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53-54 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner that would survive dismissal, opportunity to replead is rightfully denied.").

9

1   Here, Homeowners have not demonstrated that their failure to plead relevant markets could
2   be rectified through a second amended complaint. Instead, they merely offer to provide additional
3   details regarding facts they have already alleged. Moreover, as the district court rightly noted,
4   Homeowners received an opportunity to amend their complaint after Smugglers' Notch filed its
5   memorandum of law delineating inadequacies in Homeowners' original complaint, yet still failed
6   to state a claim. Under such circumstances, we decline to find that the district court abused its
7   discretion in denying Homeowners leave to replead.

8   **C. Conclusion**

9   We have reviewed the parties' remaining arguments and find them to be moot, waived, or
10  without merit. *See In re Nortel Networks Secs. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) (noting the
11  "'well-established general rule that an appellate court will not consider an issue raised for the first
12  time on appeal'" (quoting *Bogle-Assegai v. Conn.*, 470 F.3d 498, 504 (2d Cir. 2006))); *Allianz Ins.*
13  *Co. v. Lerner*, 416 F.3d 109, 114 (2d Cir. 2005). The judgment of the district court is therefore
14  AFFIRMED.

15  
16  FOR THE COURT:
    Catherine O'Hagan Wolfe, Clerk

17

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit